ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY
v. JAMES T. CRAIGO.

No. 644.

1. **Value of Land—Evidence.**—Upon the issue as to the value of land damaged by an overflow, evidence of the value of another tract situated on the same stream twenty miles distant is not admissible.

2. **Railway Company—Liability for Causing Overflow.**—Where a railway company, in order to protect one of its bridges, constructs an embankment without sufficient waterways therein to allow the overflow of a river to pass off in its usual channel, thereby causing an overflow of land, it is liable for the damages resulting therefrom.

3. **Same—Jurisdiction—Indian Territory.**—The fact that the motive power which started the injury was put into operation on the north side of Red River, in the Indian Territory, will not exempt the defendant from liabilty in the courts of this State, wherein the overflowed lands are situated.

4. **Surface Water—Damages from Overflow.**—The rules of law in reference to obstructing and changing the current of surface waters should not be charged by the court in an action for injuries resulting from the overflow from a river diverted by reason of an embankment.

APPEAL from Lamar.   Tried below before Hon. E. D. McCLELLAN.

*H. D. McDonald, T. W. Carlock,* and *E. D. Kenna,* for appellant.

1.   Evidence of the market value of other lands on Red River, of the same character and quality as plaintiff's, should have been admitted.

2.   Water which leaves the banks of a stream and overflows the land is surface water, and property owners have a right to protect themselves against it, without being liable to neighboring land owners for injuries resulting from the diversion of such waters.   Taylor v. Fickas, 31 Am. Rep., 114; Abbott v. Railway, 53 Am. Rep., 581; Hoard v. City of Des Moines, 62 Iowa, 326; Moyer v. Railway, 88 N. Y., 351; Lessard v. Straum, 51 Am. Rep., 715; Railway v. Hammer, 31 Am. Rep., 216; 24 Am. and Eng. Encyc. of Law, 896–903, 909–917; Gannon v. Hargadon, 87 Am. Dec., 626; Gross v. City of Lampasas, 74 Texas, 195; 1 Ct. App. C. C., sec. 417; Hoyt v. City of Hudson, 9 Am. Rep., 473; O'Connor v. Railway, 5 Am. and Eng. Ry. Cases, 82; Rowe v. Railway, 39 Id., 255; Angell on Water Courses, 6 ed., sec. 108a.

3.   The court will take judicial notice of the fact that the embankment complained of, "on the north side of Red River," is not in the State of Texas, but in the Indian Territory.   It is needless to remark that article 4171 of our Revised Statutes, providing that railroads shall furnish outlets for surface water, only applies to railroads that are built in Texas, and could have no extra-territorial force.

4.   If defendant's embankment was a work of public utility, prudently and skillfully constructed under lawful authority, then defendant would not be liable for consequential damages.   Bellinger v. Railway, 23 N. Y., 43; Radcliff's Exrs. v. Mayor of Brooklyn, 53 Am. Dec., 357; Lamb v. Reclamation Co., 2 Am. St. Rep., 775; White Lead Co.

v. City of Rochester, 53 Am. Dec., 316; Bloodgood v. Railway, 31 Am. Dec., 313.

*Dudley & Moore,* for appellee—1. The charge of the court submitted the case fairly and fully upon the issues made by the pleadings and evidence, and it was not error to refuse all the special charges asked by appellant. Railway v. Overheim, 76 Texas, 437; Rousell v. Stranger, 73 Texas, 670; Railway v. Anderson, 79 Texas, 427; Railway v. Wood, 69 Texas, 679.

2. No one has a right to gather even surface water and discharge it on adjacent lands. Ogburn v. Connor, 46 Cal., 346; same case, 13 Am. Rep., 213; Kelly v. Dunning, 39 N. J. Eq., 482; Forble v. Clifton, 22 Ohio St., 247; same case, 10 Am. Rep., 732; Weis v. Madison, 75 Ind., 241. And the same rule applies to a railroad company erecting an embankment. Railway v. Cox, 91 Ill., 500; Curtis v. Railway, 98 Mass., 428; McCormick v. Railway, 70 Mo., 359; 79 Texas, 427.

3. Appellant can not escape liability because it had authority from Congress to build and operate its road. Such rule would be violative of the Constitution of the United States, as well as the State. Pompella v. Green Bay Co., 13 Wall., 166; Railway v. Fuller, 63 Texas, 467; Railway v. Eddins, 60 Texas, 656; 2 Wood Ry. Law, sec. 253.

4. The suit was properly brought in Texas. Where an act is committed in a State or Territory by which land across the line in another State is injured, suit is properly brought in the State where the land is injured. Rorer on Inter-State Law, p. 140, note 2.

LIGHTFOOT, Chief Justice.—The suit was brought by appellee to recover damages in the sum of $2540 for injury to his farm, crops, and fences during the spring of 1891 and the spring of 1892, on account of being overflowed, inundated, and washed away by the waters from Red River, which injury and damages were alleged and claimed by appellee to have been directly caused by appellant by the negligent construction of its bridge across Red River, a short distance above appellee's farm, and the rip-rapping of the north bank of Red River, and the throwing up of a long embankment from the north end of the bridge across the bottom of the hills, from ten to fifteen feet high, and some two miles in length, leaving only three waterways, which were insufficient to allow the water to pass in times of high water in its usual course, but dammed it up, turned it back, and changed the current of the river, and caused it to run through appellee's farm.

Appellant pleaded a general denial, and by way of special answer alleged, that the damage to appellee's crops, farm, and fences were caused by an extraordinary overflow of Red River, without any fault of appellant in the construction of its bridge, rip-rap, and embankment; that the current of Red River is constantly changing, without regard to the construction of said bridge, rip-rap, and embankment; that after the overflow of 1888 there was considerable change in the

current of the river, from a point six miles above said bridge, by the cutting of the river through Pitt's bend; that this change of the current of the stream above the bridge directed the current below the bridge, and near appellee's farm; alleged that said farm was low and subject to overflow; alleged authority by an act of Congress to construct said works, and that they were of public utility; and alleged that it rip-rapped the bank of the river, built the embankment and rip-rapped it to protect its railroad from surface water, and pleaded the statute of limitation of two years. There was a verdict and judgment for appellee for $834, from which this appeal is taken.

The testimony and verdict and judgment thereon justify the following conclusions: The appellee owned a farm on the south bank of Red River, about a half mile below where appellant's line of railway crosses, such farm prior to 1891 being above the overflow from headwater, but sometimes subject to partial inundation from Fishing Creek, and from a ditch, which was not seriously injurious. Prior to the spring of 1891 appellant made certain improvements in attempting to protect the north end of its bridge, and constructed an embankment from the north end of its bridge, on the north side of Red River, across the bottom to the foot hills, about one mile and a quarter in length and ranging from two to fifteen feet in height, which it rip-rapped at the ends with rock so as to protect it from washing; leaving three waterways in such embankment. Appellant also rip-rapped the north bank of the river with rock for about a half-mile up the river, beginning at the bridge. Before the building of this embankment and other improvements, in times of overflow the water would leave the bank on the north side of the river above the bridge and spread out over the bottom, and would flow back into the river below appellee's farm. By reason of the construction of such embankment and rip-rap work, and by reason of the failure of appellant to leave sufficient waterways in the embankment to allow the water to pass off in times of overflow, the water was dammed up and the current thrown with great force upon and over appellee's farm, during the overflows of 1891 and 1892, whereby it was injured and damaged to the full amount of the verdict and judgment below. Our other conclusions of fact will be found under the different assignments of error considered.

1. The first assignment of error is, that the court erred in excluding the testimony of J. B. Wright, to the effect, that about the time that plaintiff's farm was injured said witness sold some lands on Red River, in Lamar County, twenty miles west of plaintiff's farm, and land of the same kind, at $7 and $10 per acre. The testimony was not admissible. There was ample testimony introduced on both sides as to the value of this particular tract of land, and what land sold for twenty miles away would not furnish a safe measure of value, especially as there was no comparison as to the improvements, distance from market, conveniences, or other things giving value to realty. In the case of Chaney v. Coleman, 77 Texas, 103, Judge Henry said: "Ap-

pellant complains of the exclusion of evidence offered by him show-
ing the value of some farms adjoining the one sold by him to plaintiff.
We think the evidence was properly excluded. The question was as
to the value of the farm conveyed to plaintiff by defendant. It is not
readily seen how its value can be correctly shown by comparing it with
others, as was proposed to be done by the defendant in this case. The
farm in question was an improved one, and was valued in the trade
as such.

"Before a value can be given to it by proving the average value of
farms in that vicinity, it should be proved that the improvements and
other things to be considered in estimating its value correspond with
like things on the farms with which it is classed. That was not done
in this case, and it is not probable that it can be done, or that a proper
predicate can be laid for the adoption of such a method of establish-
ing value, instead of proving it directly."

2. The appellant's second assignment of error is as follows: "The
court erred in excluding the testimony of the witness M. M. Arthur,
as shown by the defendant's bill of exceptions number 2." The bill
of exceptions upon the testimony of this witness is as follows: "That
the defendant offered to prove by one M. M. Arthur that he owned a
farm on Red River, about twenty miles above plaintiff's land; that
during the overflows which have occurred since 1888 he had lost about
seventy-five acres of land by the banks caving and the land caving
into the river. This was objected to by plaintiff, because it was not
shown that the witness' land was similarly situated with reference to
the bridge and embankment, which objection was sustained. Defend-
ant's attorneys then stated to the court that they expected to prove the
same with reference to the Tinnan farm, some ten miles below plaint-
iff's land, and that other farms above and below had been sanded and
washed by these overflows, which the court, for the same ground, also
excluded."

It is not clear from this bill of exceptions whether appellant ex-
pected to prove by this witness anything further than the fact that
"he had lost about seventy-five acres of land by the banks caving and
the land caving into the river;" but conceding that this witness would
also have sworn the same facts in regard to the Tinnan farm, some ten
miles away below plaintiff's land, and that other farms above and be-
low had been sanded and washed by these overflows, this would not
have tended to establish any issue in this case. It does not appear
how such farms were situated with reference to appellee's, or with ref-
erence to the appellant's embankment, or whether or not they had
previously been subject to overflow. It may be that these farms were
so situated that they were always subject to overflow. There might
be caving banks without any overflow whatever. We think it is clear
that the court did not err in excluding this testimony: (1) If it should
be conceded that the Arthur farm, twenty miles above, and the Tin-
nan farm, ten miles below, had during the overflow of 1888 lost con-

siderable land by caving in of banks, this would not have tended to show anything concerning the overflows of 1891 and 1892, or any other; for the reason, that the loss of land by caving banks does not indicate an overflow of the land thus lost. (2) The fact that "other farms above and below had been sanded and washed by these overflows" would not tend to prove any fact regarding appellee's farm, unless such farms were shown to be similarly situated, or at least some fact shown indicating that the same rise in the river which sanded and washed such farms would be likely to affect appellee's farm in the same way. It might be that an adjoining farm would usually be inundated by every rise of the river, when this one would escape uninjured. The rule of admitting such testimony of comparison, if indulged at all, should be carefully guarded, and unless the conditions can be shown to be similar, it is properly excluded. Chaney v. Coleman, 77 Texas, 103; Railway v. Locker, 78 Texas, 283; Railway v. Nicholson, 25 S. W. Rep., 54; Railway v. Dunlap, 26 S. W. Rep., 655.

3. The third and eighth assignments of error are presented together, and are as follows:

(3) "The court erred in the first paragraph of its charge by telling the jury, in effect, that defendant would be liable in any event for obstructing the flow of surface water."

(8) "The court erred in refusing to give special charge number 4, asked by defendant, which was as follows: 'You are instructed, that defendant had a legal right to protect its roadbed from the ravages of surface water; that water leaving the usual channel of the river in times of overflow and flowing over the land is surface water. If you find that plaintiff sustained injury from the overflows in controversy, but if you further find that his injury resulted from a diversion of such surface water, caused by defendant's rip-rap or embankment, built for the protection of its property against such waters, then in that case you will find for the defendant.'"

The charge of the court as given upon this subject, was as follows:

"First. If you believe from the evidence that the defendant railway company constructed and built the bridge across Red River and the embankment and rip-rap work, etc., alleged by the plaintiff, prior to the spring of the year of 1891, and that any or all of said works were built or constructed without leaving sufficient or proper waterways or means of escape for the waters of all ordinary overflows—that is, all and such overflows as might reasonably have been expected to occur by a person of ordinary prudence, taking into consideration the natural character and history of the stream and the height of previous floods; and if you further so believe, that during an overflow in the spring of 1891 and in the spring of 1892, or in the spring of either 1891 or 1892, by reason of the absence of sufficient or proper waterways, said works as constructed by defendant so obstructed, impeded, or changed the waters of said river as to directly cause the same to break or run over the south bank of the same and overflow the farm of

plaintiff described in his petition, and thereby damaged his farm, or his fence, or crops thereon situated, then you will return a verdict for plaintiff, unless you find for defendant on the ground of such overflow being extraordinary, under the instructions hereinafter given you.

"Second.  If the works of the defendant were constructed with sufficient and proper waterways or outlets for the escape with safety to adjacent farms of all such floods as might from the nature and character of the stream, its history, and the height of previous floods have been reasonably anticipated by engineers of ordinary skill and prudence, and if the flood or floods which broke or washed over the bank and damaged plaintiff's farm was or were so extraordinary that the same could not reasonably have been anticipated by engineers of ordinary prudence and sagacity, from the history and character of the river and the height of previous overflows, then you will find for the defendant, even though you should believe that the works constructed by the defendant caused plaintiff's farm to be overflowed and damaged.

"Third.  If you find that the break and overflow which damaged plaintiff's farm (if it was so damaged) was caused by the river cutting off Pitt's bend and straightening its channel, or if you fail to find that the works constructed by the defendant caused said damage to plaintiff substantially as alleged in plaintiff's petition, you will return a verdict for the defendant."

The above charges are a clear presentation of the issues as made by the pleadings and evidence.  The injury to appellee's farm was not from surface water, but from a current of water turned across the same. There has been much scientific learning exemplified by the different law writers in attempting to define what is "surface water," in the sense claimed by those who insist that it is the "common enemy," against which every property owner has a right to protect himself.

The contests in regard to surface waters, as such, have been usually determined by reference to the civil law or the common law, or settled by statute.  Many of the States have adopted the civil law rule upon the subject, and others the common law.  The former rule is thus stated in 24 American and English Encyclopædia of Law, page 907: "Under the rule of the civil law, where two estates adjoin and one is lower than the other, the lower must necessarily be subject to the natural flow of water from the upper one.  This inconvenience is deemed to arise from its position, and is considered usually to be more than compensated by other circumstances.  Hence, the owner of the lower ground has no right to erect embankments whereby the natural flow of the water from the upper ground is stopped, nor has the owner of the upper ground a right to make excavations or drains by which the flow of water is diverted from its natural channel and a new channel made on the lower ground; nor can he collect into one channel waters usually flowing off into his neighbor's land by several channels, and thus increase the wash upon the lower estate."  *   *   *

The other rule is thus stated in the same work, on page 917: "In opposition to the rule of the civil law, what has been known as the common law doctrine has been adopted in many of the States. Under this rule it is held, that the right of the owner of the land to occupy and improve it in such a manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his land is so situated, with reference to that of adjoining owners, that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing on it from the surface of adjoining lots, either to stand in unusual quantities on the adjacent lands, or to pass onto and over it in greater quantities and in other directions than they were accustomed to flow."

The above rules apply only to such as are purely surface waters. The same authority thus lays down a rule of universal application: "The rule that an owner of land who collects water in a body and casts it upon the lower premises to their injury, is responsible in damages, is followed alike in the States which have adopted the common law as well as those which have adopted the civil law." 24 Am. and Eng. Encyc. of Law, 931; Barkley v. Wilcox, 86 N. Y., 148; Railway v. Miller, 68 Miss., 760.

In this case it was alleged and proved, that appellant had constructed its bridge across Red River at a bend, below which is appellee's farm (as fully shown by plat in the record). That several hundred feet above this bend was a sudden bend at which the river turns southeast; that across the bottom on the north side of the river, appellant so constructed its embankment as not to leave sufficient waterways to allow the overflow water to pass off in its natural and usual course, but dammed it up and threw it back into the main channel and across the stream in great force, so as to turn the current across appellee's farm, carrying large trees and driftwood, and washing away much of the farm. We do not think any theory having reference purely to surface waters has any application to this case, and we find no error in the refusal of the court below to give the charge requested by appellant's counsel. Railway v. Overheiser, 76 Texas, 437; Rousel v. Stanger, 73 Texas, 670; Railway v. Anderson, 79 Texas, 427; Railway v. Wood, 69 Texas, 679; Railway v. Pomeroy, 67 Texas, 498; Railway v. Parker, 50 Texas, 330; Railway v. Morrison, 71 Ill., 616; Kelly v. Dunning, 39 N. J. Eq., 482; Tootle v. Clifton, 22 Ohio St., 247; Weis v. City of Madison, 75 Ind., 242; Curtis v. Railway, 98 Mass., 428.

The fact that the motive power which started the injury was put into operation on the north side of the river, in the Indian Territory, could not alter the rule so clearly established both by the common law and the civil law.

4. Appellant's fourth and ninth assignments of error are considered together, as follows:

"(4) The court erred in the second paragraph of its charge, by making defendant an insurer of its embankments against consequential damage to neighboring landowners, and by failing to charge that if defendant's works were of great public utility, prudently and skillfully constructed under lawful authority, defendant would not be liable for consequential damages."

"(9) The court erred in refusing to give special charge number 5 asked by defendant, which was as follows: 'If you should find from the evidence that defendant's embankment did dam or obstruct the waters overflowing the bottom north of Red River, and deflected the same, causing injury to plaintiff's lands and crops, and you should further find that said railroad embankment was skillfully constructed in pursuance of lawful authority, then in that case defendant would not be liable for such consequential damages, and you are instructed to find for the defendant.'"

Under these assignments appellant invokes the doctrine, that if its embankment was a work of public utility, prudently and skillfully constructed under lawful authority, then defendant would not be liable for consequential damages. That the work of building the railroad was one of public utility is not questioned, and there is no doubt of the lawful authority of the company to construct its line of railway and build its bridge. But it appears that this line had been constructed and its bridge built and used for a number of years without any injury whatever to appellee's farm. It was after the embankment was constructed and the rip-rap work put in, which diverted the current of the stream across appellee's farm, when the injury was done. There was no special complaint that the work of constructing the embankment within itself was not done with artistic skill. It may have been made of the very best material and constructed by skillful mechanics, but the defect shown was, that it did not have sufficient waterways to allow the water to pass off in times of overflow. This question was fairly submitted to the jury by the charge of the court as given, and the special charge asked was properly refused.

The only remaining assignment of error is as follows: "The court erred in refusing to give special charge number 3 asked by defendant, which was as follows: 'If you find from the evidence that defendant's embankment was skillfully constructed, and that sufficient trestle work and waterways were put in along the bottom on the north side of the river to allow the passage, without material obstruction, to the water overflowing the north bank of said river during ordinary overflows, then plaintiff has no ground to recover damages, and you will find for the defendant.'"

This charge was substantially given by the court below in its main charge to the jury, and we find no error in its refusal.

The judgment is affirmed.

*Affirmed.*

Delivered March 13, 1895.