LEVI BASS ET AL. V. S. G. TAYLOR ET AL.

No. 6314.   Decided February 5, 1936.
(90 S. W., 2d Series, 811.)

*L. J. Truett,* of McKinney, for plaintiffs in error.

Defendants in trial court (Plaintiff in error in Supreme Court) had the right to allege and prove facts relating to their application to the Board of Water Engineers; the approval of said board; the examination and inspection of the engineer of said board; and the condition existing in the vicinity. Jefferson County Drainage District No. 6 v. McFaddin, 291 S. W., 322; Higgins v. Spear, 283 S. W., 584; Id., 15 S. W. (2d) 1010; R. S., 1925, Arts. 7960 and 7971.

*John Doyle,* and *A. M. Wolford,* both of McKinney, for defendants in error.

It was not error for the court to sustain the objection of the plaintiff to the evidence of defendant regarding duties of the state engineer and his approval of the plans to build the levee in question and the condition, etc., existing in the vicinity, because of same being immaterial and irrelevant.

Jackson v. Knight, 268 S. W., 773; R. S., 1925; Title 128, Ch. 5; 40 Cyc. 558, sec. 2.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

The Court of Civil Appeals in its opinion, affirming the judgment of the trial court (50 S. W. (2d) 853), has made a statement of this case sufficient for the purposes of this opinion, and we shall not attempt a complete statement of the facts and issues. We do append hereto, however, a reproduction of a portion of the map which accompanies the record. The map is entirely too large for us to reproduce as a whole, but that part which we do attach is sufficient for a proper conception of the facts which gave rise to the legal questions here involved.

The locus of the controversy is in the valley of Wilson Creek, in Collin County. It lies between Wilson Creek and the East Fort of the Trinity River, but a short distance above their junction. Both streams rise several miles to the north or northwest, with a broad divide or interfluve between their valleys, but as the streams flow toward their junction point the valleys approach until on reaching the place of controversy here their interfluve has in effect disappeared, leaving only a narrow divide, broken at intervals by gaps, opened up by the corrasive effect of the flood waters of the streams through which the overflow waters of Wilson Creek leave their own valley and pass into that of the Trinity. The plaintiffs in error were constructing a levee, or levees, connecting up the remnants of this broken divide, for the purpose of confining the overflow waters of Wilson Creek to its own valley, and preventing them from passing into the valley of the Trinity and onto their land, when this suit was filed. Wilson Creek is indicated by the black lines shown on the map, between which we ourselves have written the words "Wilson Creek." On the southern bank of this stream levees are indicated by rather broad white lines between black hachure marks. Similar levees are also shown on the northern side of the creek, as will be observed on the map. Road embankments are designated and shown in broad white lines. On the northern side of the stream, and some distance from it, will be seen white lines, which, as shown on the map, indicate hills or high ground. The levees to which we have previously referred are marked on the map "Levee," and will be readily observable. Running from a point at or near blocks marked "Barn" and "House" on the northern side of Wilson Creek, immediately adjacent to a slough, and run-

ning in a southeasterly direction, is a small white line, marked "Proposed Levee." Just where this proposed levee terminates we are not able to state from the record before us, nor it is necessary to do so for the purposes of this opinion, although the evidence shows it to be about 1600 feet in length. It will be seen that this proposed levee extends from the square marked "Barn" across an old slough to a hill, enclosed by white lines and marked "Hill Line," and from which there runs a levee to the north bank of Wilson Creek. None of the constructions marked "Levee" were made by the plaintiffs in error. Some of the levees at least were made by the defendants in error, or their predecessors in title. It is obvious from an examination of the map that the defendants in error, or their predecessors in title, had protected their lands lying south and north of Wilson Creek from the overflow waters of the creek. It is plain, also, that the effect of the levee running from the hill (indicated by the words "Hill Line") in a westerly direction, previously mentioned, had the effect of protecting the Wallis and other lands southeast of it, and concentrating the flood waters of Wilson Creek, which came out of that stream from its north side, and forcing these waters through the gap between the hill on which the barn and house are located and the hill immediately southeast thereof, and observable from the small white line to which we have referred as being drawn to represent a part of the proposed levee of the plaintiffs in error. That the system of levees constructed by the defendants in error, or their predecessors in title, and the *"levee"* running from the hill line just above referred to, had the necessary effect of throwing a large volume of water onto the lands of plaintiffs in error, which would not have passed over same but for the construction of the levees, there can be no doubt. In fact, in response to Special Issue No. 3, which is copied in the opinion of the Court of Civil Appeals (50 S. W. (2d) 854), the jury found that the plaintiffs (defendants in error), or some of them, had constructed upon their respective premises levees which in flood time divert the flood waters from Wilson Creek and cause the same to flow upon the lands of plaintiff in error in greater volume than would have flowed upon same if said levee, or levees, had not been built.

The plaintiffs in error propose to construct their levee from the points indicated on the map, and which are represented by a white line marked "Proposed Levee," in such manner as to stop *all* of the overflow waters from Wilson Creek from flowing upon their lands. As shown by the opinion of the Court of

Civil Appeals, the trial court enjoined them from making this construction; and this judgment was in all things affirmed by the Court of Civil Appeals. The judgment of the trial court, however, went too far, and enjoined the plaintiffs in error from building any levee to protect themselves from the overflow waters of Wilson Creek. The judgment in this respect reads as follows:

"It is therefore ordered, adjudged and decreed by the Court that the temporary injunction heretofore issued in this cause on to-wit: the 29th day of July, 1930, be and the same is hereby perpetuated and made permanent and the defendant Levi Bass and J. L. Bass, and each of them, is perpetually prohibited and enjoined from erecting or causing to be erected any dam, barrier, or levee which will obstruct the natural flow of the flood waters of Wilson Creek or from the flood lands of Wilson Creek onto or across the lands and premises of said defendants and each of them through the natural slough or depresssion between the high elevation at or near the north boundary line of the land of plaintiff S. G. Taylor and the high elevation northwest of said first named elevation and on the Wallis land near the residence now occupied by Less Hardin or from in any way obstructing the natural flow of the said flood waters or overflow waters of Wilson Creek from passing through said slough and depression between said elevations, and that said defendants Levi Bass and J. L. Bass remove the part of said levee constructed by them across said low lands and depressions between said above named elevations and restore said lands and premises to their natural condition of drainage and that defendants pay all costs herein incurred."

██ From a reading of the judgment it is obvious that the plaintiffs in error have been enjoined not only from erecting the levee so as to protect their lands from the overflow waters of Wilson Creek, which would naturally pass onto their lands if there had been no system of levees constructed, but they have been enjoined from erecting levees against the additional overflow water which is thrown upon their lands by reason of these levee constructions of the defendants in error. We quite agree with the Court of Civil Appeals in its conclusion that plaitiffs in error cannot build levees to obstruct the flow of the overflow waters of Wilson Creek, where these waters would flow over their lands had no system of levees been constructed by others, and that the court was correct in holding that a riparian owner has not right to construct an embankment or barrier along

the normal bank of a stream to protect his land from its over-flow, when such an embankment would cause the waters of the stream in times of ordinary floods to damage the lands of other riparian proprietors. Farnham on Waters, Vol. 2, § 530, p. 1725 et seq.; Fort Worth Improvement District v. City of Fort Worth, 106 Texas, 148, 158 S. W., 164, 48 L. R. A. (N. S.) 994, and other authorities cited by the Court of Civil Appeals. But this is not the case before us. The case before us is one where a large portion of the water, to say the least, thrown upon the lands of plaintiffs in error is thrown there by reason of the changing of the normal banks of Wilson Creek by defendants in error, or their predecessors in title. Now, as to this additional water, it is quite plain that the plaintiffs in error have a right to construct levees which will prevent its passage onto their lands. The Court of Civil Appeals in the fourth paragraph of its opinion (50 S. W. (2d) 855) clearly recognized this rule. See also Bunch v. Thomas, 121 Texas, 225, 49 S. W. (2d) 421. The court says, however, that plaintiffs in error are not permitted to go beyond this defensive right. This conclusion is correct, but the trouble with the judgment of the trial court, and with the opinion of the Court of Civil Appeals which affirmed it, is that the plaintiffs in error are likewise enjoined from erecting levees to hold back the additional water thrown upon their lands by the levees. Under the law as declared by the Court of Civil Appeals, and with which we are in accord, the plaintiffs in error are entitled to construct levees sufficient to hold back the additional water thrown upon their lands by reason of the levees of defendants in error; but of course, as the Court of Civil Appeals says, they have no right to erect a levee which will not only turn back the overflow water upon their land, caused by the levees of defendants in error, but will divert overflow water largely in excess of what they may lawfully defend against.

■ In subdivision (b) of the seventh assignment of error in the application of this Court, the plaintiffs in error correctly state that the defendants in error have constructed upon their premises certain levees which in flood times divert the waters of Wilson Creek and cause said waters to flow through the gap where it is proposed to erect the levee of plaintiffs in error and onto the lands of plaintiffs in error. In this assignment they state, also, that plaintiffs in error have the right to erect the proposed levee, in order to protect their own lands from the waters so diverted by the levees of defendants in error, and

forced out of the Wilson Creek valley through the gap in question, and onto the lands of plaintiffs in error, in the East Fork valley of the Trinity. We sustain this assignment. We are also of the opinion that the plaintiffs in error were entitled to plead and prove that they had secured a permit for the erection of their levees, and had their plans for same approved by the State Reclamation Engineer. This evidence was not irrevelant and immaterial. It was competent under the statute (R. S., Art. 8028) for the purpose of showing that the plaintiffs in error had commplied with the statute and were making an effort to erect a lawful levee. We think, also, that the plaintiffs in error were entitled to prove, and have a jury finding to the effect, that their lands were damaged by the additional waters caused to flow upon them, as the evidence may show they do flow, whether in a dispersed or concentrated form, due to the erection of the levees or levee system by the defendants in error.

The plaintiffs in error complain in subdivision (b) of their seventh assignment in the application that:

"The uncontradicted evidence shows that the flood waters that are so diverted from Wilson Creek valley through the gap in question into the East Fork valley and onto defendants' lands are thereby severed from the main current never to return; and said waters thereby become surface waters against which the defendants have the common law right to erect their proposed levee, since the surface water statute of 1927, embraced in Article 7589a, by its express terms provides that its passage shall in no way affect the construction and maintenance of levees and other improvements for the purpose of controlling floods, overflows and freshets in rivers, creeks and streams."

There is no merit in this assignment. The flood waters of Wilson Creek to which plaintiffs in error refer do not become surface waters at the point where plaintiffs in error seek to levee against them, but are at that time and place still the waters of Wilson Creek, moving over the *flood plain* or *flood channel* of that stream. The map before us shows that Wilson Creek in flood time at this particular locality occupies an area bounded on the north side by the narrow broken divide between Wilson Creek and the East Fork of the Trinity, and on the south side by the high grounds indicated on the map. This area is the *flood channel* or *flood plain* of the stream, and is just as much a part of the anatomy of Wilson Creek as its bed, banks, and ordinary channel; and the waters that flow therein when the stream overflows its banks are still the waters of

Wilson Creek, and are not surface waters. Farnham on Waters, Vol. 3, § 879, pp. 2558 to 2560, § 880, p. 2562. In the sections cited Mr. Farnham in part says:

"The weight of authority, as well as of reason, is that flood water is not, and cannot be treated as, mere surface water. It it said in Crawford v. Rambo (44 Ohio St., 287, 7 N. E., 429) that it is difficult to see upon what principle the flood waters of a river can be likened to surface water. When once surface water has found its way to the beds of well-defined streams, and has joined their currents, it ceases to possess any of the qualities of surface water. And the mere fact that for the time being the regular channel of the stream is not sufficient to contain all of the water does not change the rule. So where, in times of ordinary high water, the stream extending beyond its banks is accustomed to flow down over the adjacent lowlands in a broader, but still definite, stream, it has still the character of a water course, and the law relative to water courses is applicable, rather than that relating to mere surface water. So, water which in time of flood is accustomed to pass from one rived to another over low-lands lying between them is not surface water which can be dammed back. * * * But water outside the ordinary banks, which is, nevertheless, flowing within well-defined channels constituting the high-water banks of the stream, is still a part thereof."—§ 879.

Again he says:

"Every stream flowing through a country subject to a changeable climate must have periods of high and low water. And it must have, not only its ordinary channel which carries the water in ordinary times, but it must have, also, its flood channel to accommodate the water when additional quantities find their way into the stream. The flood channel of the stream is as much a natural part of it as is the ordinary channel. It is provided by nature, and it is necessary to the safe discharge of the volume of water. With this flood channel no one is permitted to interfere to the injury of other riparian owners. When the water rises until it reaches the margin of this flood channel, and begins to flow over it, it may do so in natural vents or outlets which are a part of the stream, and with which there can be no individual interference to the injury of other persons; or it may spread out uniformly over a large section of country in small volume and with no definite course or ultimate destination, but which will gradually be lost by evaporation or percolation into the ground. The principles which prevent interference with the water when a part of the rushing

torrent, or when finding its way by well-defined outlets from one stream to another, do not apply with equal force to the water when it is spread out over the face of the country in such a way as to have lost its power to maintain a continued flow. By keeping these forms distinct, and considering in every case to which of them a particular decision applies, most of the seeming conflict in the authorities disappears. Thus, the courts are very nearly agreed that the flood channel must be considered as a part of the channel of the stream, and that no structures or obstructions of any kind can be placed in its bed which will have a tendency to dam the water back upon the property of the upper riparian owner. * * * The laws of physics are such that, when the water is excluded from a portion of one side of its bed, it will either be deepened over the entire channel, or it will appropriate an equal portion of the opposite shore to accommodate itself. Therefore, the direct result of the erection of a levee on one side of the river if the banks are of equal height is to cast the water upon the land on the opposite side of the stream. As has been seen, this cannot be done when the stream is in its normal condition. And that rule is equally applicable in case of the flood channel, so that a portion of it cannot be appropriated by a levee on one side to the injury of the owners on the opposite side. When the water leaves the flood channel by a regular channel, and finds its way to an outlet, this channel must be regarded as a part of the stream, and cannot be interfered with. The course which the flood water is in the habit of taking cannot be changed to the injury of private landowners."—§ 880.

See also the cases cited in the notes to §§ 879 and 880, cited above, and the case of St. Louis & S. F. Ry Co. v. Craigo, 10 Texas Civ. App., 238, 31 S. W., 207 (writ refused).

It is obvious from the above that the rule properly applicable to the overflow waters here in controversy is the one applicable to the overflow waters of a stream, and not to surface waters.

For the errors pointed out, the judgments of the District Court and Court of Civil Appeals are both reversed, and the cause remanded to the District Court.

Opinion delivered February 5, 1936.