**Jack V. STONER, Appellant,**

v.

**CITY OF DALLAS, Appellee.**

No. 16458.

Court of Civil Appeals of Texas.

Dallas.

June 25, 1965.

Rehearing Denied July 23, 1965.

Strasburger, Price, Kelton, Miller & Martin, and Frank L. Skillern, Jr., Dallas, for appellant.

N. Alex Bickley, City Atty., and Kenneth C. Dippel, Asst. City Atty., Dallas, for appellee.

BATEMAN, Justice.

The appellant Jack V. Stoner sued appellee City of Dallas for damages to his home resulting from the alleged diversion of flood waters of South Ash Creek, which flows adjacent to his home. The trial court sustained the appellee's motion to dismiss the suit on the ground that the petition failed to state a cause of action. The appellant pitched his suit upon the alleged violation by appellee of Vernon's Ann.Civ.St. Art. 7589a, which provides in part:

> "It shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this State * * * in such manner as to damage the property of another, by the overflow of such water so diverted or impounded, and that in all such cases the injured party shall have remedies, both at law and in equity, including damages occasioned thereby * * *."

The rule at common law was that a landowner could for his own protection divert from its natural course surface water collecting upon his own land from rainfall, even though his act in doing so resulted in injury to the land of his neighbor. But this rule was changed by the above statute. Hester v. McAdams, Tex.Civ.App., 203 S.W. 121, wr. ref.

The motion to dismiss was based in part on the proposition that it appeared from appellant's own petition that the flood waters he complained of were not "surface waters" as contemplated by the Legislature in enacting the said statute, and that although appellant alleged the flood waters were "surface waters" such allegation was patently a mere conclusion.

The essential parts of the appellant's first amended original petition were as follows:

"During the year 1961, the Defendant, through its agents and employees, constructed a concrete bridge at the area where Lakeland Drive crosses South Ash Creek, City of Dallas, State of Texas. In conjunction with this construction, the channel of said South Ash Creek was widened, deepened and straightened by the Defendant through its agents and employees, from a point extending from the concrete bridge to a point approximately 200 feet east and upstream from such bridge. Plaintiff's home is located immediately west and downstream from said construction. Because of said construction, the natural flow of the flood waters exceping [escaping] from the natural stream of South Ash Creek, which are surface waters in the State of Texas, was diverted in such a manner as to damage Plaintiff's home, by the overflow of such waters so diverted, as hereinafter alleged.

"On or about the 28th day of April, 1963, a rain fell in the area of Plaintiff's home and the area basin of South Ash Creek and because of the action of the City of Dallas in widening, deepening and straightening the channel of South Ash Creek, Plaintiff's property was flooded by the flood waters and overflow of South Ash Creek, his gravel driveway washed away, his lawn eroded and his property was covered with debris. * * *

"The hereinabove described widening, straightening and deepening of South Ash Creek by the defendant * * * was in contravention of Article 7589–a, Texas Revised Civil Statutes, which provides, inter alia:" (Here the petition quotes that portion of Art. 7589a quoted above).

"Because of the hereinabove described construction, which diverted the natural flow of the flood waters of South Ash Creek, Plaintiff's property, which includes a house and lot, located at 2224 Lakeland Drive, Dallas, Texas, has been damaged permanently."

Thus is drawn the narrow issue of whether or not the waters complained of were "surface waters" contemplated by the statute or were merely part of the stream itself.

Perhaps the leading Texas case on the subject is Sullivan v. Dooley, 31 Tex.Civ. App. 589, 73 S.W. 82, no wr. hist., wherein we find this language:

"There has been a great diversity of opinion as to the rights and liabilities of parties diverting surface water from their land, but not more so than on the question as to what constitutes surface water. Some courts hold that flood water from a stream is surface water, but the larger number class such water as a part of the stream, and hold that it is not surface water. In the case of O'Connell v. [East Tenn. V. & G.] Railway [Co.] [87 Ga. 246] 13 S.E. 489, 13 L.R.A. 394, 27 Am.St.Rep. 246, the authorities on the question as to what constitutes surface water, and as to the rights of parties to divert waters, whether surface or otherwise, are fully reviewed by the Supreme Court of Georgia. The court said: 'If the flood water becomes severed from the main current, or leaves the stream, never to return, and spreads out over the lower ground, it has become surface; but if it forms a continuous body with the water flowing in the ordinary channel, or if it departs from such channel animo revertendi, presently to

return, as by the recession of the waters, it is to be regarded as still a part of the river. The identity of a river does not depend upon the volume of water which may happen to flow down its course at any particular season. The authorities hold that a stream may be wholly dry at times, without losing the character of a water course. So, on the other hand, it may have a flood channel to retain the surplus waters until they can be discharged by the natural flow.' We think the language quoted is supported by common sense and experience, as well as the weight of authority."

The court also quoted with approval the following from Cairo V. & C. Ry. Co. v. Brevoort, 62 F. 129, 133, 25 L.R.A. 527:

"The waters cast into a stream by ordinary floods must have a channel in which they are accustomed to flow, and, if they have, that channel is a natural water course, with which no riparian proprietor can lawfully interfere to the injury of another. If there is a natural water way or course, and its existence is necessary to carry off the water cast into the stream by ordinary floods, that way is the flood channel of the stream; and, if it is the flood channel of the stream, the water which flows there cannot be regarded as surface water. Surface water is that which is diffused over the ground from falling rains or melting snows, and continues to be such until it reaches some bed or channel in which water is accustomed to flow. Surface water ceases to be such when it enters a water course in which it is accustomed to flow; for, having entered the stream, it becomes a part of it, and loses its original character. * * * It must

necessarily follow from this general principle that where water naturally flows, though the volume may change with the varying seasons, there is a natural water course, even though at times the place where the water flows in ordinary floods may become entirely dry."

It would seem that the test applied in the foregoing cases was approved and adopted by the Texas court and, so far as we can find, no Texas court has approved or adopted any other. See Sun Underwriters Ins. Co. v. Bunkley, Tex.Civ. App., 233 S.W.2d 153, wr. ref.; Hoefs v. Short, 114 Tex. 501, 273 S.W. 785, 40 A.L.R. 833; International-Great Northern R. Co. v. Reagan, 121 Tex. 233, 49 S.W.2d 414; Bass v. Taylor, 126 Tex. 522, 90 S.W. 2d 811; and 60 Tex.Jur.2d Waters, § 199, p. 504. Therefore we adopt and apply it here.

It is quite obvious, we think, from the language used in his petition, as quoted above, the appellant is not alleging that his loss was caused by flood water which has become "severed from the main current, or leaves the stream, never to return," but is alleging damage from flood waters which form "a continuous body with the water flowing in the ordinary channel." That being true, it is quite clear to us, as evidently it was to the trial court, that the petition did not allege a cause of action in that the statute upon which the pleading is bottomed prohibits only the diversion of "surface waters" and the waters alleged to have damaged appellant's property were obviously not "surface waters". The judgment dismissing the case was correct, and we therefore affirm it.

Affirmed.