In re The ADJUDICATION OF WATER RIGHTS OF the LOWER GUADALUPE RIVER SEGMENT, Guadalupe River Basin, and a Portion of the Lavaca—Guadalupe Coastal Basin.

No. 13–86–414–CV.

Court of Appeals of Texas, Corpus Christi.

April 2, 1987.

Rehearing Denied May 7, 1987.

James A. Kilgore, Kilgore & Kilgore, John T. Mitchell, Kilgore & Kilgore, Dallas, for appellant.

Paul Elliott, Asst. Atty. Gen., Environmental Protective Div., Austin, for appellee.

Before UTTER, SEERDEN and DORSEY, JJ.

## OPINION

UTTER, Justice.

This is an appeal from an adjudication of the water rights in Green Lake. The Texas Water Commission determined that the waters of Green Lake are owned by the State of Texas. The Indianola Company filed exceptions to the determination in the district court pursuant to Tex. Water Code Ann. § 11.318 (Vernon Supp.1987). The district court affirmed the Commission's ruling. We affirm the judgment of the trial court.

Indianola is the owner of a majority of the land constituting the bed of Green Lake. Green Lake is formed by a large natural depression in the land. Indianola contends that it owns the water in Green Lake and, therefore, the Commission has no jurisdiction to regulate the use of the water.

The lake bed was originally purchased from the State by Elmer Yates in 1918, but was forfeited for non-payment of interest. The land was then purchased from the State by Howard Kenyon in 1928. Kenyon is Indianola's predecessor in title.

The sole issue presented by this appeal is whether the water in Green Lake is publicly or privately owned. Indianola raises nine points of error contending, for various reasons, that the Water Commission, and the trial court, erred in determining that the water is publicly owned.

In 1889, the Legislature of the State of Texas enacted the first law declaring that certain waters lying in the State are the property of the public. Ch. 88, § 2 1889 Gen.Laws 100. State waters, however, were limited to "the unappropriated waters of every river or natural stream within the arid portions of the State." *Id.*

This Act was amended in 1895, broadening the definition of the State owned waters to "the unappropriated waters of the ordinary flow or underflow of every running or flowing river or natural stream, and the storm or rain waters of every river or natural stream, canyon, ravine, depression or watershed...." Ch. 21, § 1 1895 Tex.Gen.Laws 21.

The law was again amended in 1917, and was in effect in 1918 when Yates bought the land, and provided as follows:

The unowned and unappropriated waters of the ordinary flow and underflow and tides of every flowing river or natural stream, of all lakes, bays or arms of the Gulf of Mexico, collections of still water, and of the storm, flood or rain waters of every river or natural stream, canyon, ravine, depression or water shed, within the State of Texas, are hereby declared to be the property of the State....

Ch. 88, § 1 1917 Tex.Gen.Laws 211.

In 1921, the above Act was amended to read:

The waters of the ordinary flow and underflow and tides of every flowing river

or natural stream, of all lakes, bays or arms of the Gulf of Mexico and the storm, flood or rain waters of every river or natural stream, canyon, ravine, depression or watershed, within the State of Texas, are hereby declared to be the property of the State....

Ch. 124, § 2 1921 Tex.Gen.Laws 233.

As can be seen, the only change was the deletion of the phrases "unowned and unappropriated" and "collections of still water."

The current law provides:

The water of the ordinary flow, underflow, and tides of every flowing river, natural stream, and lake, and of every bay or arm of the Gulf of Mexico, and the storm water, floodwater, and rainwater of every river, natural stream, canyon, ravine, depression, and watershed in the state is the property of the state.

Tex.Water Code Ann. § 11.021(a) (Vernon Supp.1987).

■ By its first point, Indianola contends that the inception of title occurred in 1918 when Yates purchased the land. There are several reasons why this point is without merit.

First, this contention was not presented to the Commission's attention by application for rehearing. As a result, no error was preserved for judicial review. *In re Adjudication of Water Rights*, 670 S.W.2d 250 (Tex.1984).

Secondly, on the merits, Indianola's argument is incorrect. Kenyon purchased the land in 1928 after Yates forfeited it due to nonpayment of interest. The law in effect at that time which regulated the purchase of such lands was entitled "PROVIDING THAT OWNERS OF FREE SCHOOL LANDS HERETOFORE FORFEITED FOR NON PAYMENT OF INTEREST SHALL HAVE A RIGHT TO REPURCHASE SAME AT THE PRICE FIXED UPON A REVALUATION." Ch. 94, 1925 Tex.Gen.Laws 267. The law provided that *only* the "owner of such land at the date of

forfeiture shall have the right for a period of ninety days after this date in the notice of revaluation of his land as herein provided, to repurchase...." *Id.* Kenyon was not the "owner." Indianola's contention that Kenyon "repurchased" the land is in error. Kenyon purchased the land under section 3, which provides that "If the owner at the date of forfeiture shall not exercise his right to repurchase, the commissioner shall again place the land on the market for sale...." *Id.* at 268. Therefore, Kenyon's title from the State of Texas did not relate back to 1918, but rather to 1928, when the 1921 enactment was in effect. For these reasons, Indianola's first point is overruled.

■ By its second point, Indianola argues that the patent issued to Kenyon's successors conveyed title to the water. Again, Indianola did not present this argument to the Commission in its application for rehearing, nor does it brief or argue the point in its brief.

Even so, the contention is without merit. The patent makes no mention of the waters lying on the land. It merely conveys the land comprising the bed of Green Lake. Indianola's second point is overruled.

By all its remaining points, Indianola basically contends that § 11.021 does not mandate that the waters of Green Lake are public waters. Initially, Indianola argues that the waters which lie in Green Lake are "surface waters" which have come to rest in a natural depression.[1] Indianola claims that a landowner owns all surface water lying upon his land, citing *Turner v. Big Lake Oil Co.*, 128 Tex. 155, 96 S.W.2d 221 (1936) and *Republic Production Co. v. Collins*, 41 S.W.2d 100 (Tex.Civ.App.—Eastland 1931, writ dism'd). However, *Collins* dealt with the private use of artificially impounded surface water and not with surface waters which were collected by a natural depression to form a lake to which the state claims title.

In *Turner*, the Supreme Court never reached the question of whether surface

---

**1.** It is agreed that all water accumulated in Green Lake originates from rain or from flood waters of the Guadalupe River.

waters which accumulated in the "draw" became public waters by application of article 7467 (the codification of the 1921 General Law set out earlier). The *Turner* Court specified that the surface waters involved were on lands granted by the State *before* the enactment of article 7467. *Turner v. Big Lake Oil Co.*, 96 S.W.2d at 228. The Court expressly reserved the question of what effect the law would have on subsequent grants:

> Interpreting article 7467 we would, in order to sustain its validity, be compelled to say that it has no application to lands granted prior to the enactment of the statute, in so far as it attempts to take from the grantees their rights to surface waters and to make them public waters subject to appropriation. Whether or not the article in this respect could be applied under our Constitution to grants made subsequent to the passage of the law is not before us in this case, and no opinion is exprssed relative thereto.

*Id.*

Had the question been before the Court, we are certain that the opposite result would have been reached.

The term "surface water" has been defined as follows:

> Surface water is generally defined as that which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground, while it remains in such diffused state.... [citation omitted] Surface waters are those which have diffused themselves over the surface of the ground, following no defined course or channel *and which have not gathered into or formed a natural body of water*, and are lost by evaporation, percolation, or natural drainage. [emphasis ours]

*Sun Underwriters Insurance Co. v. Bunkley*, 233 S.W.2d 153, 155 (Tex.Civ. App.—Fort Worth 1950, writ ref'd); *see also Stoner v. City of Dallas*, 392 S.W.2d 910 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.); *Sullivan v. Dooley*, 31 Tex.Civ.App. 589, 73 S.W. 82 (Tex.Civ.App.—Dallas 1903, no writt).

■ When surface waters or flood waters permanently come to rest in a natural depression, they lose their characteristics as surface or flood waters and become the waters of a lake or pond. *See Bass v. Taylor*, 126 Tex. 522, 90 S.W.2d 811, 815 (1936); *International-Great Northern Railroad Co. v. Reagan*, 121 Tex. 233, 49 S.W.2d 414, 417 (1932); *Humphreys-Mexia Co. v. Arseneaux*, 116 Tex. 603, 297 S.W. 225, 229 (1927); *Walenta v. Wolter*, 186 S.W. 873 (Tex.Civ.App.—San Antonio 1916, writ ref'd). This principle of law was aptly stated by our Supreme Court in *Arseneaux*:

> All water when it comes, in the usual course of its migration, to rest permanently in a basin made by nature for that purpose, although it may have been flood water at one time, ceases to be flood water, and becomes a lake or pond. Water of this character comes within the usual physiographic definition of lakes and ponds, regardless of its origin.

*Humphreys-Mexia Co. v. Arseneaux*, 297 S.W. at 229.

■ Once surface waters and flood waters come to rest in the natural depression formed by the bed of Green Lake, they become lake waters. As such they clearly come within the province of § 11.021 and its predecessors, whether classified as a "lake" or as "the storm water, floodwater, and rainwater of [a] ... depression."

Indianola also argues that § 11.021 and its predecessors only apply to "flowing waters." A reading of this section clearly evidences that the legislature provided for it to apply to far more than just "flowing waters." Indianola's remaining points of error are overruled.

The judgment of the trial court is AFFIRMED.