THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellee, *v.* UNITED STATES STEEL CORPORATION, Defendant-Appellant.

First District (5th Division)    No. 61895

Opinion filed July 23, 1976.

Rooks, Pitts, Fullagar and Poust, of Chicago (Jay A. Lipe, James T. Harrington, and William M. Stevens, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago, *pro se* (Joseph V. Karaganis, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant United States Steel Corporation brings this interlocutory appeal from an order denying its motion to stay the proceedings in the trial court.

The present action was instituted in 1972 by the State of Illinois, through the Attorney General, against U. S. Steel seeking a permanent injunction to prevent the Gary, Indiana, Works of the corporation from allegedly "causing, permitting, or allowing the discharge of waste products into Lake Michigan," or the Grand Calumet River. The three count complaint alleged causes of action under specific statutory grants of authority to the Attorney General to prevent air, land, or water pollution in the State of Illinois (Ill. Rev. Stat. 1971, ch. 14, pars. 11 and 12) and to enforce the provisions of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*) and under the Attorney General's common law power to seek abatement of a public nuisance.

Defendant filed a motion on January 22, 1975, to stay the proceedings in the trial court pending the completion of an adjudicatory hearing before the United States Environmental Protection Agency (EPA) which was initiated by defendant with respect to a permit issued to its Gary Works

under the National Pollution Discharge Elimination System (NPDES).[1] The motion to stay invoked the doctrines of primary jurisdiction and exhaustion of administrative remedies. The trial court heard argument with respect to the motion and denied it in an order entered April 28, 1975. This appeal followed.

Defendant appeals pursuant to Supreme Court Rule 307 (Ill. Rev. Stat. 1975, ch. 110A, par. 307) which permits an interlocutory appeal from an order denying or granting a stay of proceedings in the trial court. *Valente v. Maida*, 24 Ill. App. 2d 144, 164 N.E.2d 538; *Wiseman v. Law Research, Inc.*, 133 Ill. App. 2d 790, 270 N.E.2d 77; and *Bohn Aluminum & Brass Co. v. Barker*, 55 Ill. 2d 177, 303 N.E.2d 1.

During the pendency of this appeal the case of *Metropolitan Sanitary District v. United States Steel Corp.*, 30 Ill. App. 3d 360, 332 N.E.2d 426, *leave to appeal denied*, 60 Ill. 2d 597, *cert. denied*, 424 U.S. 976, was decided. There the plaintiff Metropolitan Sanitary District sought, as does the Attorney General here, to enjoin defendant from continuing to discharge pollutants into Lake Michigan at its Gary Works. Defendant U.S. Steel, as in the present case, sought a stay of the trial court proceedings, setting forth the pendency of an adjudicatory hearing before the U.S. Environmental Protection Agency on the permit issued to defendant under the NPDES.[2] There, as here, defendant urged the trial court to invoke the doctrine of primary jurisdiction and require plaintiff to exhaust its administrative remedies. The court denied the motion.

That order was affirmed in a comprehensive opinion which recognized the statutory authority of the Sanitary District to seek relief against pollution of a water supply.

The court rejected the doctrine of primary jurisdiction as inapplicable, noting that an examination of the Federal Water Pollution Control Act (33 U.S.C. §§1251 *et seq.* (1974 Supp.)) disclosed that the continuing intention of Congress was:

> " * * * not only to perpetuate rights of municipalities, such as plaintiff, to adopt and enforce requirements to abate pollution more stringent than any which may be adopted under the Federal system but also to make certain that this activity by States and municipal corporations, such as plaintiff, continues for the public benefit." *Metropolitan Sanitary District*, at 368.

The court also disposed of defendant's argument that the trial court and the Federal administrative agency were hearing the same matter and that

---

[1] The NPDES permit issued to U. S. Steel set certain limitations on discharges of pollution at the Gary Works. The EPA hearing was to consider U. S. Steel's contention that those limitations were technologically and economically infeasible and invalid.

[2] It should be noted that the adjudicatory hearing urged as the basis for defendant's motion to stay in the Metropolitan Sanitary District case is the identical proceeding urged as reason to stay the present action below.

the complex scientific and technological questions involved required a first resort to the agency for a consistent and uniform determination of the facts. This contention, said the court:

> " * * * is based entirely upon the faulty and erroneous premise that both this court and the Federal administrative agency are dealing with the identical problem." *(Metropolitan Sanitary District*, at 369.)

Noting that the Federal statute had as its goal the gradual elimination of pollution, the court stated that, in contrast:

> " * * * the proceedings before us involves total abatement. * * * [and] are thus completely divergent from the matter pending before the administrative body. In a situation of this type, the doctrine of primary jurisdiction is not applicable. We do not have here an issue of priority of jurisdiction but we have two tribunals which are approaching a problem from entirely different points of view and which are attempting to exercise jurisdiction in two entirely different matters." *Metropolitan Sanitary District,* at 370.

Finally, the court rejected the theory that exhaustion of administrative remedies by the Sanitary District was required, pointing out that the doctrine applied only where: " ' * * * a party aggrieved by administrative action ordinarily cannot seek review in the courts without pursuing all administrative remedies available to him.' *(Illinois Bell Telephone Co. v. Allphin,* 60 Ill. 2d 350, 358, 326 N.E.2d 737.)" or "'* * * where a claim is cognizable in the first instance by the administrative agency alone; * * *.' [*United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 63, 1 L. Ed. 2d 126, 132, 77 S. Ct. 161.]" Metropolitan Sanitary District, at 376.

The court concluded that to grant a stay of proceedings to defendant would be ignoring:

> " * * * the strong and definite language used by Congress with the clear objective of encouraging the rights of municipalities in the field of water pollution abatement. We would be obliged to conclude that the language of Congress, which expressly permits municipalities to adopt more stringent standards, is meaningless." *Metropolitan Sanitary District,* at 370.

We have carefully examined the arguments of the parties on the application of the *Metropolitan Sanitary District* decision to the instant case, and we are convinced that our decision here is governed squarely by the holding in that case. We are not persuaded by defendant's contention that the case is in any way distinguishable from the one at bar.

Defendant seeks to escape the implications of the *Metropolitan Sanitary District* decision in several ways. First, it argues that unlike the Sanitary District, the State of Illinois is represented both in the present

action and in the NPDES administrative proceeding by statutorily designated representatives.

■■   The Attorney General is not a party to the NPDES permit hearing, as defendant concedes. However, it is argued that the Illinois Environmental Protection Agency is before the Federal tribunal, and that this places the State, through different representatives of its executive branch, in the position of making "discordant demands" upon defendant before the agency and in the courts for inconsistent forms of relief.

This is not a valid distinction. Under the concurrent scheme of regulation envisioned by Congress, Illinois may seek to abate in its entirety any pollution over which it may have jurisdiction, and it is not inconsistent for the State to seek simultaneously to convince the Federal agency that it should impose the strictest possible limits on the amount of pollutants defendant should be permitted to discharge into Lake Michigan.

It is equally clear that the Illinois legislature did not intend for the Attorney General to be precluded from seeking judicial relief merely because of the pendency of administrative action. Section 2 of "An Act in relation to the prevention and abatement of air, land and water pollution" (Ill. Rev. Stat. 1975, ch. 14, par. 12,) unequivocally states:

"The Attorney General has the power and authority, notwithstanding and regardless of any proceeding instituted or to be instituted by or before the Environmental Protection Agency, Pollution Control Board or any other administrative agency, to prevent air, land or water pollution within this State by commencing an action or proceeding in the circuit court of any county in which such pollution has been, or is about to be, caused or has occurred, in order to have such pollution stopped or prevented either by mandamus or injunction. * * * "

The clear intent of Congress to allow the States or their political subdivisions the primary responsibility for enforcing their own, more stringent standards by common law nuisance actions (33 U.S.C. §§1251 and 1370 (1974 Supp.); see also *People ex rel. Scott v. City of Milwaukee,* 366 F. Supp. 298 (N.D. Ill. 1973)), or the equally clear intent of our legislature to confer that responsibility on the Attorney General (Ill. Rev. Stat. 1975, ch. 14, par. 12) would be thwarted by a stay of these proceedings.

Although defendant argues that the agency proceedings are concerned with treatment of discharges, while the Attorney General seeks a recycle program to all but eliminate such discharges, defendant is not placed in the position of being unable to comply simultaneously with requirements of the NPDES permit and any possible order of the circuit court. If the circuit court should ultimately order abatement measures against U. S.

Steel more stringent than those set by the NPDES permit, compliance with the State standard would, by defendant's own admission, satisfy the Federal requirements.

Defendant next contends that the Illinois EPA has presented evidence to the administrator in the NPDES proceeding on the extent of the Illinois standards in discharges, and that the Federal Water Pollution Control Act (33 U.S.C. §1311(b)(1)(C) (1974 Supp.) requires that the Federal agency determination be made in such a way so as to assure compliance with Illinois requirements. Thus, defendant argues, that part of the *Metropolitan Sanitary District* decision based on the reservation of State authority to determine and enforce its own standards is not applicable because the Attorney General would still be able to bring this action if the agency adjudication were unsatisfactory.[3]

Defendant also urges that the *Metropolitan Sanitary District* decision is distinguishable with regard to the exhaustion doctrine. It contends that the Illinois EPA, as the statutorily designated representative of the State, has not exhausted its administrative remedies in the NPDES hearing, and that this action should therefore be stayed until the administrative proceedings have run their course.

These arguments are also without merit. We have already observed that the Attorney General is specifically authorized by statute to "prevent air, land and water pollution" in the State by commencing an action in the circuit court. Moreover, we note that the Federal administrative proceedings were commenced on October 18, 1974, with defendant filing a request for an adjudicatory hearing on the NPDES permit previously issued to it. Counsel for defendant stated on oral argument that the initial decision of the Regional Administrator of the U. S. Environmental Protection Agency was issued on May 11, 1976, and that a petition for review of that decision has been filed.

■■ The complaint of the Attorney General alleges that the discharge of pollution into Lake Michigan by defendant will "create a nuisance or render such waters harmful or detrimental, or injurious to public health, safety or welfare * * * " unless enjoined by a court of equity. Where, as here, the gist of the action is a threat of immediate and continuing harm to the public health, to stay this action for months or even years while the administrative determination is appealed through the Federal courts would be to render the Attorney General's power to enforce the State standards a nullity and would countenance the irreparable harm to the public that this action seeks to enjoin.

■■ Defendant next urges that the order of the trial court denying the

---

[3] On this rationale defendant might as easily urge the administrative agency to defer action on the NPDES permit until the trial of this case determines what the applicable Illinois standards on water quality are to be.

stay was based on the erroneous ground that "the State of Illinois is not a party to the [administrative] proceedings." It is an established rule of law that where the decision of the trial court is correct, the reasons assigned for it are immaterial, and any basis appearing in the record or in law which would sustain the ruling will be sufficient. *Keck v. Keck*, 56 Ill. 2d 508, 309 N.E.2d 217; *McFadden v. Wernecke*, 35 Ill. App. 2d 441, 183 N.E.2d 181; *Monarski v. Greb*, 407 Ill. 281, 95 N.E.2d 433.

Finally, defendant argues that the decision in *Metropolitan Sanitary District* was erroneous and should be overruled.

The short answer to this contention is that our Supreme Court and the Supreme Court of the United States have both refused to hear further appeals seeking to overturn the appellate court ruling.

Moreover, the United States Supreme Court has recently rendered its decision in *Nader v. Allegheny Airlines, Inc.,* ___ U.S. ___ ,48 L. Ed. 2d 643, 96 S. Ct. 1978, which should dispel any remaining doubt about the correctness of the *Metropolitan Sanitary District* case. Nader, although holding a valid reservation, was denied a seat on the respondent air carrier because the flight had been overbooked. He instituted a common law tort action against the airline, and judgment was entered in his favor by the district court.

The Court of Appeals reversed *(Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527 (D.C. Cir. 1975)), holding that the doctrine of primary jurisdiction required that the district court should have stayed further action on Nader's fraudulent misrepresentation claim pending the outcome of a rule-making procedure before the Civil Aeronautics Board.[4]

The United States Supreme Court, in reversing the Court of Appeals, noted the similarity between the saving clause of the Federal Aviation Act (49 U.S.C. §1506 (1970)) which provided: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies" and the saving clause that was the subject of the decision in *Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 51 L. Ed. 553, 27 S. Ct. 350, which first announced the doctrine of primary jurisdiction.[5] Although it might appear from that case that Nader was required initially to resort to the primary jurisdiction of the Civil Aeronautics Board, Mr. Justice Powell found the two cases distinguishable. He pointed out that:

---

[4] As in the case at bar, the court took judicial notice that an administrative proceeding on related questions was already under way.

[5] It is worthy of mention that the Supreme Court in that case conceded that a common law right, even absent a saving clause, cannot be abrogated "unless it be found that the preexisting right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory."

"In this case, unlike *Abilene,* we are not faced with an irreconcilable conflict between the statutory scheme and the persistence of common-law remedies. In *Abilene* the carrier, if subject to both agency and court sanctions, would be put in an untenable position when agency and court disagreed on the reasonableness of a rate. The carrier could not abide by the rate filed with the Commission, as required by statute, and also comply with a court's determination that the rate was excessive." (___ U.S. ___, ___ , 48 L. Ed. 2d 643, 652, 96 S. Ct. 1978, 1985.)

In the absence of such a conflict, the court decided, a stay of the trial proceedings would be improper, and no resort need be made in the first instance to the agency.

As we have already noted above, the irreconcilable conflict which would support a stay of proceedings in this case is not present. Defendant is not placed in an untenable position by this result, despite its strenuous efforts to persuade us to the contrary. The Federal statutory scheme and the Attorney General's State and common law remedies are not mutually exclusive. Here, unlike the Interstate Commerce Commission rate cases where simultaneous compliance with commission and court determinations was impossible, the NPDES permit merely sets a maximum level of pollutants that defendant may discharge into Lake Michigan. Defendant is not thereby placed in a position where it is unable to comply with a circuit court order setting more stringent limits on discharges. It could meet the State-imposed standards and remain in compliance with the permit issued by the Federal agency. This is the distinction we think the Supreme Court sought to convey in *Nader* and which in our view confirms the soundness of the reasoning in *Metropolitan Sanitary District.*

Inasmuch as we are not persuaded that there is any valid reason to distinguish the holding in *Metropolitan Sanitary District,* we conclude that the result in this appeal must perforce follow the conclusion reached in that case. Accordingly the order denying a stay of proceedings is affirmed.

Order affirmed.

LORENZ, P. J., and SULLIVAN, J., concur.