William J. SCOTT, on his own behalf and on behalf of all persons similarly situated, Plaintiff,

v.

CITY OF HAMMOND, INDIANA; United States Environmental Protection Agency; Douglas M. Costle, Administrator of the United States Environmental Protection Agency, Hammond-Munster Sanitary District, Defendants.

PEOPLE OF the STATE OF ILLINOIS and the Metropolitan Sanitary District of Greater Chicago, a municipal corporation, Plaintiffs,

v.

The SANITARY DISTRICT OF HAMMOND, a municipal corporation; Joseph A. Perry; Thomas C. Conley; Gilbert DeLancy; Theodore Dunajeski; and the City of Hammond, Indiana, a municipal corporation, Defendants.

Nos. 80 C 4563, 80 C 4775.

United States District Court, N. D. Illinois, E. D.

June 24, 1981.

Dorothy Attermeyer, U.S. Environmental Agency, Chicago, Ill., William L. Want, Pollution Control Status, U.S. Dept. of Justice, Washington, D. C., for Conley and DeLancy.

Kenneth Anspach, Tyrone C. Fahner, Atty. Gen., George Wm. Wolff, Chief, Environmental Control Div., James Murray, Metropolitan Sanitary District of Greater Chicago, Chicago, Ill., for plaintiffs.

Jeremiah Marsh, David O. Toolan, Michael Schneiderman, John L. Conlon, Hopkins, Sutter, Mulroy, Davis & Cromartie, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

This matter comes before the court on defendants' motions to dismiss. For the reasons stated below, those motions are denied.

These two lawsuits (among others) arose from the pollution of Lake Michigan and the fouling of many Chicago public beaches last summer. Both complaints allege that the City of Hammond and the Sanitary District of Hammond (collectively, "Hammond") discharged large quantities of raw and inadequately treated sewage into Lake Michigan which was carried by the currents onto Chicago's beaches. Each complaint asserts several causes of action based upon federal common law of nuisance, Illinois common and statutory law of nuisance, Illinois common law of trespass, and Illinois statutory environmental law. In light of *City of Milwaukee v. Illinois*, —— U.S. ——, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (*"Milwaukee II"*), the federal common law counts must be dismissed.[1] The issue presented here, then, is whether the causes of action based on Illinois law state claims for which relief may be granted against these non-Illinois defendants.

For this court, the first question presented by this issue is the effect of a Seventh Circuit decision that appears to be squarely on point in support of Hammond's position that federal law is the exclusive source of remedy for Illinois, Scott and the Metropolitan Sanitary District of Greater Chicago ("MSD"). In *City of Evansville v. Kentucky Liquid Recycling*, 604 F.2d 1008 (7th Cir. 1979), the Indiana municipality sought damages from several Ohio defendants under state and federal laws governing discharges into waterways. Among other rulings, the court affirmed the dismissal of plaintiff's state law claims. Although the dismissal holding is unequivocal, the basis for that decision is not altogether clear. The rationale provided for the dismissal is only a quote from the court's earlier opinion in *Illinois v. City of Milwaukee*, 599 F.2d 151, 177 n. 53 (7th Cir. 1979), *vacated*, —— U.S. ——, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (*"Milwaukee (7th Cir.)"*): "[I]t is federal common law and not state statutory or common law that controls in this case."[2]

Illinois and Scott argue separate theories contending the *Evansville* holding is no longer controlling, while Hammond, of course, submits that *Evansville* is both valid and binding. Illinois maintains that a more recent Seventh Circuit opinion than *Evansville* clarifies the issue in this Circuit. In *Illinois v. Outboard Marine Corp.*, 619 F.2d 623 (7th Cir. 1980), the court held that Illinois can maintain a federal common law cause of action against an in-state pollution

---

1. The dismissal of the federal law claim does not defeat subject matter jurisdiction here. The *Scott* case is based upon diversity jurisdiction, which remains. The *Illinois* and *Metropolitan Sanitary District* case was removed from the Circuit Court of Cook County based upon federal question jurisdiction and pendent jurisdiction exercised over the state law claims. Although the federal law claim is now dismissed, the court has discretion to retain pendent jurisdiction. *Rosado v. Wyman*, 397 U.S. 397, 404–5, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970). Because this case has progressed for nine months in this court with two agreed orders entered and because it raises issues similar to those in *Scott* and other cases, the interests of convenience and judicial economy dictate the retention of jurisdiction.

2. Illinois petitioned for certiorari on this part of *Milwaukee (7th Cir.)*, but it was denied. —— U.S. ——, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981).

source to prevent pollution of interstate or navigable waters. Within that opinion, the court reasoned that there should be uniform federal law governing the federal tort of polluting federal waters. 619 F.2d at 628. In a footnote reference, the court stated that the uniformity it and *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), (*"Milwaukee I"*) envisioned was a uniform floor. Therefore, a state could "undertake more stringent pollution control than that offered by federal statute or common law [under] its own statutes and common law." 619 F.2d at 628 n. 16. Illinois argues that this language, being the most recent language of the court, supercedes *Evansville* and establishes the right to bring these state law claims here.

Scott presents an entirely different argument as to why *Evansville* is not binding on the court. His argument is premised on the assertion that because the only foundation for the *Evansville* decision is the *Milwaukee (7th Cir.)* decision, *Evansville's* validity is dependent on the continuing validity of *Milwaukee (7th Cir.)*. *Milwaukee II* vacated and remanded *Milwaukee (7th Cir.)*. Scott's theory, then, is that the whole Seventh Circuit opinion, including footnote 53, is no longer in existence and cannot be precedent for any other decision. Therefore, Scott argues, *Evansville* is no longer valid and the issue of application of state law to out-of-state pollutants is unresolved in this Circuit.[3]

In response to Illinois' argument, Hammond contends that the *Outboard Marine* decision applies only to an in-state polluter, which was the case before the court. Hammond submits that this limitation on *Outboard Marine* is particularly appropriate because the court never referred to *Milwaukee (7th Cir.)* or *Evansville*. In response to Scott's argument, Hammond asserts that *Milwaukee II* has a different effect on *Milwaukee (7th Cir.)*. It maintains that based on the rationale of *Milwaukee II*, i.e., federal common law has been supplanted by fed-

eral statutory law, the vacating order means the Seventh Circuit must replace the remedies it upheld under common law with permissible federal statutory remedies. All other provisions of *Milwaukee (7th Cir.)*, Hammond argues, remain valid law. Hammond further submits that this interpretation is buttressed by the Supreme Court's disposition of Illinois' cross-petition for certiorari on the issue of whether state law was available to Illinois. Hammond contends that if the Supreme Court had intended the Seventh Circuit to reconsider its decision on state law, the Court would have specifically directed reconsideration in light of *Milwaukee II* instead of simply denying certiorari at —— U.S. ——, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981). For *Hammond*, the denial of certiorari means the Seventh Circuit's determination on state law remains the law.

Although all the parties have presented viable arguments on this somewhat knotty precedent issue, Scott's contentions are more persuasive. The denial of certiorari on Illinois' petition should not be attributed any significant meaning. Commentators and courts have continually recognized that denial of certiorari has no precedential weight. Further, as Scott suggests, the Court may have denied certiorari because it had already vacated the *Milwaukee (7th Cir.)* opinion and there was no longer a case for which to grant the petition. *Milwaukee II* must be interpreted as vacating the entire *Milwaukee (7th Cir.)* opinion, including footnote 53 which states that federal common law, not state law, is controlling. Because footnote 53 is the only rationale provided in *Evansville* for the decision that state law claims do not apply, *Evansville* is no longer binding precedent on that issue. Therefore, an independent analysis of the question is appropriate.

Hammond contends that this issue presents a question of federal law, because the question is whether our federal system permits state substantive rights to be given

---

**3.** On remand in the Seventh Circuit, Illinois will take the position that the district court had

correctly applied state law against *Milwaukee*.

extra-territorial application. The fundamental position of Hammond is that a state does not have the power to impose its law on an out-of-state discharger of wastes into an interstate body of water. Thus, Hammond disputes Illinois' initial premise that Illinois law provides a source of rights for which the *Erie* doctrine mandates Illinois law to govern. Of course, Hammond's first argument in support of its views is that the *Evansville* case conclusively established the invalidity of state claims in this case. As earlier noted though, *Evansville* provided no analysis for its conclusion. Thus, Hammond seeks support for its position in decisions from other circuits and from language in *Milwaukee I* and *II*.

In recognizing the existence of federal common law, the Court in *Milwaukee I* analogized the pollution issue to the equitable apportionment of interstate streams and establishment of state boundaries. In those areas of law, federal common law had developed because they presented federal questions. *Milwaukee I* also quoted an earlier Tenth Circuit opinion which had recognized federal common law as governing water pollution nuisances. *Milwaukee I*, 406 U.S. at 107 n. 9, 92 S.Ct. at 1395 n.9. That court concluded, "Federal common law and not the varying common law of the individual States is . . . entitled and necessary to be recognized as a basis for dealing in uniform standard with the environmental rights of a State against improper impairment by sources outside its domain." *Texas v. Pankey*, 441 F.2d 236, 241–42 (10th Cir. 1971).

Hammond argues that subsequent cases applying *Milwaukee I* further support its contention that federal law is the exclusive source of rights in this case. In *Committee for the Consideration of the Jones Falls Sewage System v. Train*, 539 F.2d 1006 (4th Cir. 1976), the Fourth Circuit sitting en banc stated that "the law of the state whose citizens were subject to injuries by the interstate pollution ought not to govern the conduct of citizens and municipalities in another state. . . ." 539 F.2d at 1008. In *Stream Pollution Control Bd. of Indiana v. United States Steel Corp.*, 512 F.2d 1036 (7th Cir. 1975), the Seventh Circuit stated that the federal common law nuisance action raises "substantial questions which only a federal court may finally answer." 512 F.2d at 1040.

These themes were definitively reaffirmed, Hammond contends, in *Milwaukee II*. There the Court characterized as inconsistent Illinois' argument that both federal and state nuisance law applied: "If state law can be applied, there is no need for federal common law; if common law exists, it is because state law cannot be used." —— U.S. at —— n. 7, 101 S.Ct. at 1790 n. 7. Hammond submits, then, that even though federal common law is now displaced, its previous existence presupposed the inapplicability of state law. In any event, Hammond argues that the clear import of *Milwaukee II* is that the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (FWPCA), has replaced the federal common law and the same analysis continues to apply to the relationship of FWPCA and state law.

Hammond contends the reason federal law must be the plaintiffs' exclusive source of remedy stems from two important considerations. First, because every state may have different and conflicting pollution control standards, federal law must be exclusive to establish uniformity. Second, if state law applies and plaintiffs prevail, then Illinois and its citizens can dictate to another state's municipality how it should run its sanitary district. This ultimately could have a significant impact on the city's treasury and on local officials' ability to conduct their own affairs. *Cf. McCulloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819).

As an alternative to its no state power argument, Hammond asserts that the FWPCA preempts extra-territorial application of state law. This contention is based on two premises. First, *Milwaukee II* described the FWPCA as "occup[ying] the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency." ——

U.S. at ——, 101 S.Ct. at 1792. Second, Hammond submits that Congress could not have intended to permit one state to apply its laws requiring stricter standards on an out-of-state discharger and thereby negate time, effort and money expended by the federal agency and municipality or industry under the federal scheme. Hammond submits Congress therefore must have intended to preempt application of state law to out-of-state dischargers.

The plaintiffs' response to Hammond's position has many aspects. They contend that Congress, in the FWPCA, clearly expressed an intent not to preempt state law from the water pollution control field. Further, plaintiffs assert that a state's power to apply its laws to an out-of-state polluter was not ousted by federal common law of nuisance. In any event, plaintiffs submit that whatever validity that argument had dissipates with the replacement of federal common law. Therefore, plaintiffs maintain that the state law claims, basically all sounding in tort, merely present simple applications of the *Erie* doctrine, choice of law principles, and utilization of court powers under in personam jurisdiction.

In regard to preemption, plaintiffs contend Congress' intent is unequivocal. In 33 U.S.C. § 1251(b) Congress stated, "It is the policy of Congress to recognize, preserve, and protect the primary responsibilities of States to prevent, reduce, and eliminate pollution...." Congress also expressly recognized that states may impose and enforce more stringent standards than the federal ones. 33 U.S.C. §§ 1311(b)(1), (k) and 1370. Furthermore, the FWPCA also provides that it does not restrict any other right a person may have. 33 U.S.C. § 1365(e). Thus, Hammond argues the FWPCA does not preempt state law.

In regard to Hammond's no state power argument, plaintiffs contend that Hammond and the cases it cites read too much from *Milwaukee I*. All the cases, they submit, rely on and misinterpret footnotes 5 and 9 in *Milwaukee I*. Footnote 5 describes the role that state law plays in developing federal common law. The Court quoted

from *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957), explaining that state law could be relevant and applied but only as absorbed in the federal law. *Milwaukee I*, 406 U.S. at 103 n. 5, 92 S.Ct. at 1392 n. 5. Footnote 9 quotes from *Texas v. Pankey*, 441 F.2d 236, 241–42 (10th Cir. 1971), where the court explained that federal law governs, but state standards may be relevant. From these footnotes, the Seventh Circuit concluded "it is federal common law and not state statutory or common law that controls...." *Milwaukee (7th Cir.)*, 599 F.2d at 177 n. 53; *Evansville*, 604 F.2d at 1021.

Plaintiffs argue that all the courts' language indicating only federal law can resolve issues such as the one presented here merely means that a claim based on federal common law must be governed by federal law. Further, they contend that federal common law ousts state law in only two situations. First, state law is automatically ousted when state law constitutionally cannot be applied. The only situation where such a result is mandated is in cases between two sovereign states. In that event, the law of neither state can prevail and federal law must govern. On the other hand, when federal common law is not based on the constitutional inapplicability of state law but is "interstitial", ouster of state law does not automatically follow. Interstitial federal common law is developed only to fill gaps so that congressional purposes may be achieved. In that case, plaintiffs contend, state law can only be preempted if Congress clearly intends such a result. Because these lawsuits are not between sovereign states and since *Milwaukee I* developed interstitial common law, plaintiffs argue only Congress can preempt concurrent state law. This, as previously discussed, plaintiffs submit Congress clearly has not done.

Because state law is not preempted or ousted, plaintiffs contend that this case should be resolved like any other tort case. They analogize Hammond's discharge and the resultant injury to a man shooting a

gun across a state line and hitting a victim in another state. The legal framework for adjudicating their rights, plaintiffs submit, is simple and clear: 1) venue and in personam jurisdiction exist in Illinois, *cf. Milwaukee II,* ——— U.S. at ——— n. 5, 101 S.Ct. at 1790 n. 5; 2) state law must apply, *Erie R.R. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 3) Illinois choice of law rules apply, *Klaxon Co. v. Stentor Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); 4) Illinois substantive law would apply, *People ex rel. Scott v. United States Steel Corp.,* 40 Ill.App.3d 607, 352 N.E.2d 225 (1976); 5) Illinois' choice of its own substantive law does not violate either the due process or full faith and credit clauses, *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979); and 6) the state law is not preempted by federal statutory or common law.

As in other cases which must be decided after a recent Supreme Court decision changes what had been recognized as controlling law, this case presents a difficult issue which, if not actually unresolved before, is presented in a new context. This motion involves considerations at the core of our federal system of government and the appropriate divisions of power between legislatures and the courts. Although this is certainly only the first attempt at resolving these questions, the court is convinced the plaintiffs are entitled to seek relief under state law claims.

■ The first consideration is whether the type of claims presented here are purely federal questions to which state law cannot apply. In *Milwaukee I,* the Court held that suing a Wisconsin municipality is not the same as suing Wisconsin. Thus, neither lawsuit is between two sovereign states. Furthermore, the issue of regulating and preventing water pollution does not present the same type of unresolvable conflict of state interests that the apportionment of boundaries and water rights does. In the latter situations, a limited quantity of land or water must be divided among competing state interests. Thus, only resort to federal law and authority can resolve those matters. In the water pollution control field, however, the issue is not dividing the pie but determining which standards will regulate discharges and provide remedies for injuries. It is theoretically possible that no conflicts will occur among the states because they agree on standards and remedies needed to protect the water. But in the more realistic situation where one or the other set of rules must be recognized as controlling, to adopt the more stringent laws does not deprive the other state of any water rights. Indeed, the benefits of stronger controls would redound to all states involved.

Of course, what the other state and its citizens would lose is the right to spend less money than it would have in protecting the water. Yet *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), establishes that there is nothing in the Constitution or our federal system of government which prohibits the imposition of this loss. In that case, a sovereign state, Nevada, itself was sued by individual Californians in California state court for injuries sustained in an automobile accident. The state court refused to recognize the immunity Nevada would have in its own courts, reasoning that California law did not provide the same immunity. The California law expressed a policy of providing full compensation to injured parties, while the Nevada law reflected a different policy concern. The Supreme Court concluded that the Constitution "does not require a State to apply another State's law in violation of its own legitimate public policy." 440 U.S. at 422, 99 S.Ct. at 1189 (footnote omitted). Certainly a state's pollution standards reflect a legitimate public policy. If that policy can be enforced against a sovereign state, it can be against a municipality, regardless of the strain on the treasury.[4]

---

**4.** The distinction that the entire tort was committed in California while this tort travels across state lines via a navigable water is immaterial. The crucial elements are that a tort

Of course, it must be recognized that the court opinions Hammond relies on seem to indicate that interstate pollution of interstate waters creates a federal question for which state law may only be used as guidelines, if at all. However, in each case, the court was addressing the contours of the federal common law. Now that there is no separate common law but only federal statutory law, the statute must be examined to determine whether Congress intended to make these pollution control matters solely a federal question.

There can be no doubt that the FWPCA does not preempt states from enforcing stricter controls than the Federal government on in-state polluters. The statutory provisions the plaintiffs point to clearly establish the states' rights and interests in the field. Further, the courts have held that the FWPCA does not preempt state law. *E. g., United States Steel Corp. v. Train,* 556 F.2d 822, 830 (7th Cir. 1977). Additionally, there is nothing in the Act nor its legislative history that indicates a different result should be reached when considering an out-of-state polluter. Hammond's arguments concerning preemption do not withstand analysis. When the *Milwaukee II* Court described the scope of the federal legislation it did so in the context of determining whether federal legislation replaced federal common law. The Court expressly recognized that the test for that displacement was less demanding than the clear intent test for preemption of state law. *Milwaukee II,* —— U.S. at ——, 101 S.Ct. at 1790–94. Hammond's argument of implied intent does not meet this test.

■ Having found no preemption of state law, the only remaining determination is which state law applies. Hammond has never really disputed, and there can be no dispute, that Illinois choice of law rules apply and that they would determine Illinois to be the substantive law of the case.

Furthermore, because the court has in personam jurisdiction over Hammond, the relief sought is within the court's power. As plaintiffs point out, this power has been recognized since the *Salton Sea Cases, California Development Co. v. New Liverpool Salt Co.,* 172 F. 792 (9th Cir. 1909). Therefore, the plaintiffs' state law causes of action state claims for which relief may be granted.[5]

As earlier indicated, this is essentially a case of first impression involving important questions of law. Because this order concerns a controlling question of law as to which there is substantial ground for difference of opinion, an immediate appeal will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Additionally, since the identical issue is apparently before the Seventh Circuit in the Milwaukee litigation, an immediate appeal of this order would promote efficient use of the litigant's and judiciary's resources. An application for appeal, though, shall not stay proceedings in this court.

Accordingly, defendants' motions to dismiss are denied.

---

injury has occurred in Illinois and that Illinois has a legitimate public policy in redressing that injury.

5. Hammond initially argued (and then apparently abandoned) that plaintiff Scott could not

maintain an Illinois common law nuisance. However, the Illinois Constitution, Art. XI, § 2 (1970) clearly establishes his right to enforce environmental rights.