Rule 23 order filed
February 3, 2006;
Motion to publish granted
March 28, 2006.

NO. 5-04-0602

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, and *ex rel.* TERRY KAID, Wabash County State's Attorney, | ) Appeal from the<br>) Circuit Court of<br>) Wabash County.<br>) |
| Plaintiffs-Appellees, | ) |
| v. | ) No. 04-CH-20 |
| PSI ENERGY, INC., | ) |
| Defendant-Appellant, | ) |
| and | ) |
| CINERGY POWER GENERATION SERVICES, LLC, | ) Honorable<br>) David K. Frankland, |
| Defendant. | ) Judge, presiding. |

_____

JUSTICE DONOVAN delivered the opinion of the court:

Defendant PSI Energy, Inc. (PSI), appeals from the preliminary injunction entered by the circuit court of Wabash County enjoining PSI from operating certain pollution-control equipment at its Gibson Power Generating Station (Gibson Station) in Owensville, Indiana, except in accordance with the terms of the injunction. PSI also appeals the denial of its motion to dismiss for lack of subject matter jurisdiction. We vacate the preliminary injunction and remand this cause with directions for dismissal on the grounds of federal preemption.

PSI owns and operates Gibson Station in Owensville, Indiana, which is approximately three miles from Mt. Carmel, Illinois. Gibson Station is a 3,150-megawatt, coal-fired,

1

electric-power-generating facility that supplies electricity to customers in Indiana. Defendant Cinergy Power Generation Services, LLC (CPGS), was not a party to the motion to dismiss, nor was CPGS enjoined by the preliminary injunction. CPGS, while connected to PSI, does not operate or exercise control over Gibson Station.

The federal Clean Air Act (42 U.S.C. §7401 *et seq.* (2000)) and United States Environmental Protection Agency (USEPA) regulations are designed to address environmental emissions and pollution-control systems at coal-fired, electric-power-generating stations such as Gibson Station. USEPA has required certain states, including Indiana, to lower nitrogen oxide emissions from such stations as well as from other large combustion sources. One means of reducing the emissions from electric-power-generating units is to use selective-catalytic-reduction equipment (SCR). SCRs use chemical processes to reduce nitrogen oxide emissions by channeling heated gas over catalytic reactants. As a result of these processes, small levels of sulfur dioxide oxidize to form sulfur trioxide. Coal-fired, electric-power-generating stations, in order to comply with acid rain regulations, must also "scrub" their emissions to reduce content. The water from the emission scrubbers, when combined with sulfur trioxide, can yield sulfuric acid. Trace amounts of both sulfuric acid and sulfur trioxide dissipate upward as a part of the plant's plume. Depending on certain variables, including weather, humidity, and wind, a plume can invert and sink to ground level for brief periods of time.

In early June of 2004, a plume inversion headed in the direction of Mt. Carmel. PSI responded by switching the type of coal used and started testing additives to counter the impact of the SCR devices on the plume. It also met with residents and city officials from Mt. Carmel and informed them of the situation and possible solutions.

A second plume inversion occurred over Mt. Carmel on the morning of July 21, 2004. In response, PSI started testing a series of different additives and instituted a "Protocol for

Operation of SCR Reactors" (hereinafter Protocol) to proactively and immediately "minimize the possibility of any potential [sulfur dioxide], [sulfur trioxide], or acid aerosol impacts in populated areas." The Protocol created a full-time, plume-watching position and called for a shutdown of the SCRs under circumstances where the plume, whether inverted or not, might head toward Mt. Carmel. As a result, there have been no plume inversions, and no plant-related haze has drifted over or near Mt. Carmel since the July incident.

The Illinois Attorney General filed a complaint and a motion to enjoin defendants from operating the SCR devices at Gibson Station except as defined in the Protocol, claiming that "emergency relief is required given that releases of sulfur trioxide have resulted in a serious hazard to the environment and to public health and welfare." Shortly after the July 21 plume reached Mt. Carmel, numerous residents complained of burning eyes, scratchy throats, and coughing caused by the thick haze covering their town. PSI filed a motion to dismiss alleging that regulation of its pollution-control devices was preempted by the federal Clean Air Act. The circuit court denied PSI's motion and entered a preliminary injunction on the grounds that "the failure to have the Court's involvement to maintain the status quo could result in irreparable harm and damage."

PSI argues on appeal that the court erred in finding subject matter jurisdiction based on the application of Illinois state law to an interstate air-emission issue controlled exclusively by federal law. PSI also asserts the court abused its discretion in finding a violation of the Illinois Environmental Protection Act (415 ILCS 5/1 *et seq.* (West 2004)) and in finding a "substantial danger" warranting an immediate injunction in the absence of actual or potential harm. PSI further finds fault with the injunction itself in that it is vague and overly broad. We agree with PSI that the preliminary injunction must be vacated and that plaintiffs' complaint must be dismissed because the Clean Air Act preempts Illinois's claims under the Illinois Environmental Protection Act. As noted in *International Paper Co. v.*

*Ouellette*, 479 U.S. 481, 93 L. Ed. 2d 883, 107 S. Ct. 805 (1987), preemption in interstate pollution disputes serves the valuable purpose of minimizing regulatory chaos, unpredictability, and innumerable interstate conflicts that are created when one state asserts jurisdiction over an out-of-state source.

Beginning some 30 years ago, a series of cases established that federal law governs interstate pollution disputes with respect to the Federal Water Pollution Control Act Amendments of 1972 (Clean Water Act) (33 U.S.C. §1251 *et seq.* (2000)) and that state law may not be applied by one state to regulate an emissions source in another state. See *Illinois v. City of Milwaukee, Wisconsin*, 406 U.S. 91, 31 L. Ed. 2d 712, 92 S. Ct. 1385 (1972); *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 68 L. Ed. 2d 114, 101 S. Ct. 1784 (1981); *Illinois v. City of Milwaukee*, 731 F.2d 403 (7th Cir. 1984). These cases were further clarified by the Supreme Court in *International Paper Co. v. Ouellette*, 479 U.S. 481, 93 L. Ed. 2d 883, 107 S. Ct. 805 (1987), in which the parties argued whether, notwithstanding the federal Clean Water Act, Vermont common law could be applied to a New York source for damages that allegedly occurred in Vermont. The Court concluded that preemption, which should not be lightly inferred, may be presumed when the federal legislation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation. *Ouellette*, 479 U.S. at 491, 93 L. Ed. 2d at 896, 107 S. Ct. at 811. In addition, the Court noted that when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, application of that law is in conflict with and is preempted by the federal law. *Ouellette*, 479 U.S. at 491-92, 93 L. Ed. 2d at 896, 107 S. Ct. at 811. Applying these principles to the matter before it, the Court in *Ouellette* held that, even if the state and federal laws have the same ultimate goal, such as eliminating water pollution, a "state law also is preempted if it interferes with the methods by which the federal statute was designed to reach this goal." *Ouellette*, 479

4

U.S. at 494, 93 L. Ed. 2d at 898, 107 S. Ct. at 813. Thus, in *Ouellette*, the Supreme Court held that the Clean Water Act preempted the application of Vermont common law to an out-of-state point source. *Ouellette*, 479 U.S. at 500, 93 L. Ed. 2d at 902, 107 S. Ct. at 816. We see no reason the reasoning would be any different with respect to the Clean Air Act and the situation presented here.

The Clean Air Act, enacted in 1970 and amended substantially in 1977 and 1990, is designed to protect and enhance the nation's air resources, to promote public health and the productive capacity of the nation, and to develop and operate regional air pollution programs. 42 U.S.C. §7401(b) (2000). Like the Clean Water Act, the Clean Air Act establishes a comprehensive program to abate air pollution. It authorizes individual states and USEPA to bring enforcement actions, limit emissions, abate pollutants through technologies, create incentive programs, and institute other control measures to accomplish the objectives of the act. 42 U.S.C. §§7410, 7413(a)(2) (2000). It also expressly recognizes that, although emissions from one state may impact another, the source state remains solely responsible for regulating activities within its boundaries, thereby ensuring that a facility is subject to one set of regulations and not potentially inconsistent controls imposed by other states claiming some impact. 42 U.S.C. §7410(a)(2)(D) (2000). The similar structures of the Clean Water Act and the Clean Air Act have already led other courts to conclude that the Clean Air Act preempts state law. See *Clean Air Markets Group v. Pataki*, 338 F.3d 82, 89 (2d Cir. 2003) (holding that the Clean Air Act preempts New York Air Pollution Mitigation Law and reasoning that the Clean Air Act's savings clause does not permit one state to control emissions in another state); *United States v. Kin-Buc, Inc.*, 532 F. Supp. 699 (D.N.J. 1982) (holding that the Clean Air Act preempts a federal common law claim of nuisance and reasoning in part that the similarities between the Clean Water Act and the Clean Air Act allow the interpretations of one act to be applied to comparable provisions of the other). We

see no reason to conclude otherwise ourselves.

Section 7604 of the Clean Air Act authorizes an aggrieved state to file a citizen suit in federal court against out-of-state sources or source states to address activities in violation of the act. 42 U.S.C. §7604 (2000). It does not, however, permit a state to use its own state law to sue a source located in another state. The application of Illinois law would subject Gibson Station, which undeniably is regulated by the Clean Air Act, to multiple and potentially conflicting obligations. An Illinois injunction against Gibson Station's use of air-pollution-control equipment means that not only Indiana, the delegated state authority under the Clean Air Act, but Illinois, as well, may have a hand in the operation of a source located solely in Indiana. This possibility for confrontation between a source state and a neighbor state is precisely what the Supreme Court prohibited in *Ouellette* (*Ouellette*, 479 U.S. at 496-97, 93 L. Ed. 2d at 899-900, 107 S. Ct. at 813-14) and should be prohibited in this instance as well. Regional, interstate pollution control requires a single, uniform decision process and rule for apportioning the use of a shared resource among states. See 42 U.S.C. §7402(a) (2000) (mandating that USEPA "shall *** encourage the enactment of improved and *** uniform State and local laws relating to the prevention and control of air pollution[] and encourage the making of agreements and compacts between States for the prevention and control of air pollution"). To achieve this important federal objective, the Clean Air Act forbids a neighboring state, such as Illinois, to insert itself as a regional superauthority with the power to enjoin, penalize, or otherwise regulate out-of-state sources. Accordingly, the court erred in using Illinois law to issue an injunction and resolve an air-emission dispute that is preempted by federal legislation under the Clean Air Act.

Given our disposition, we need not address any other issues tendered by either party. For the aforementioned reasons, we vacate the preliminary injunction and remand this cause with directions for dismissal on the grounds of federal preemption.

Vacated; cause remanded with directions.

CHAPMAN and McGLYNN, JJ., concur.

NO. 5-04-0602

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, and *ex rel.* TERRY KAID, Wabash County State's Attorney, | ) Appeal from the<br>) Circuit Court of<br>) Wabash County.<br>) |
| Plaintiffs-Appellees, | )<br>) |
| v. | ) No. 04-CH-20<br>) |
| PSI ENERGY, INC., | )<br>) |
| Defendant-Appellant, | )<br>) |
| and | )<br>) |
| CINERGY POWER GENERATION SERVICES, LLC, | )<br>) Honorable<br>) David K. Frankland, |
| Defendant. | ) Judge, presiding. |

_____

**Rule 23 Order Filed:** February 3, 2006
**Motion to Publish Granted:** March 28, 2006
**Opinion Filed**: March 28, 2006

_____

**Justices**:   Honorable James K. Donovan, J.

Honorable Melissa A. Chapman, J., and
Honorable Stephen P. McGlynn, J.,
Concur

_____

**Attorneys for Appellant**   Robert M. Olian, Byron F. Taylor, Emily A. Springston, Sidley Austin, LLP, One South Dearborn Street, Chicago, IL 60603

_____

**Attorneys for Appellees**   Lisa Madigan, Attorney General, State of Illinois, Gary Feinerman, Solicitor General, Mary E. Welsh, Assistant Attorney General, 100 West Randolph Street, 12th Floor, Chicago, IL 60601

_____